IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

    Plaintiff,

v.                                              Case. No. 20-mj-1031 GBW

ETHAN OLLER, *et al.*,

    Defendants.

## ORDER

This matter comes before the Court upon Defendant Oller's Motion to Reconsider Detention Order and Set Conditions of Release (*doc. 26*). Having considered the Motion, the Response and Pretrial Services' Response to Motion for Reconsideration,[1] the Court concludes that no hearing or further argument is necessary. The Motion will be DENIED.

## PROCEDURAL HISTORY

On April 14, 2020, a criminal complaint was filed charging the defendant Ethan Oller (hereinafter "Defendant") and his co-defendant Sebastian Chacon with possession with intent to distribute marijuana and tetrahydrocannabinol ("THC") and conspiracy,

---

[1] "Pretrial Services believes the Court should maintain its original position and not release the defendant as we have not received information from our respective agencies reporting that the Detention Centers to include Otero County; are unable to address the inmates needs when it comes to a diagnosis of COVID-19, combined with a health condition(s). As such, based on the identified risk factors identified in the Bail Report prepared for your Honor on April 21, 2020, we maintain our original recommendation and respectfully oppose any release conditions the Motion filed by defense counsel."

1

contrary to 21 U.S.C. §§ 841 and 846, and with possession of a firearm during, in relation to, and in furtherance of a drug trafficking crime, contrary to 18 U.S.C. § 924(c). *Doc. 1*. The complaint also alleges that the firearms possessed were discharged, contrary to 18 U.S.C. § 924(c)(1)(A)(iii). *Id*. The Defendant was arrested on April 20, 2020, and ordered detained pending trial on April 27, 2020. The Court ordered the Defendant to be detained as a flight risk and a danger to the community based on the Defendant's failure to introduce sufficient evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. *Doc. 21*. Indeed, three separate charges against Defendant carry the rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3) -- 18 U.S.C. § 924(c), 21 U.S.C. §§ 841(c)(1)(C), and 21 U.S.C. §§ 846 in violation of 21 U.S.C. § 841(c)(1)(C). Defendant has not appealed this ruling. Defendant now moves the Court "to order him temporarily released to his approved third-party custodian pursuant to a $5,000 unsecured bond and ankle-monitor/house arrest conditions." *Doc. 26* at 8.

## RECONSIDERATION UNDER §3142(f)(2)

It is clear that Defendant is seeking this relief pursuant to §3142(i) which permits temporary release. However, given the motion's title, he may also be seeking a reconsideration of the detention order pursuant to §3142(f)(2). *See doc. 26*. Although Defendant does not cite §3142(f)(2), the Court will briefly address it. Under that provision, "the [detention] hearing may be reopened… if the judicial officer finds that

information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. §3142(f)(2). As will be discussed below, Defendant's arguments for release center around a medical condition which arose after the initial detention decision.[2] While Defendant's concerns are relevant as potential "compelling reason[s]" under §3142(i), they do not particularly bear on Defendant's risk of flight or danger to the community. Consequently, the Court will not reopen or reconsider the detention order under §3142(f)(2).

## TEMPORARY RELEASE UNDER §3142(i)

The relevant statute allows for temporary release of a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. §3142(i). The defendant bears the burden of proof under this provision. *United States v. Reese*, 2012 WL 13080791, *2 (D.N.M. April 2, 2012) (citation omitted). Defendant's compelling reasons are that he has tested positive for COVID-19 and he suffers from asthma. As a result, he is at higher risk for medical complications.

---

[2] Defendant also argues that he can pay the $100 cash bond on his active warrant. *See doc. 26* at 1-2. However, such information was certainly "known to the movant at the time of the hearing" and thus inappropriate as a basis for reconsideration under §3142(f)(2).

3

It seems self-evident that requests for temporary release under §3142(i) should not be analyzed in a vacuum. The Court must balance the reasons advanced for such release against the reasons (and their strength) under the statutory factors which led to detention. In this case, the Court will evaluate the following factors: (1) the strength of the basis for the defendant's pretrial detention, (2) the nature of defendant's medical concerns, and (3) the efficacy of the proposed release plan in addressing the concerns of the Court when the original detention decision was made as well as the medical concerns now present.

## BASIS FOR DETENTION

Even without relying on the presumption of detention, the statutory factors overwhelmingly support detention of Defendant. First, the nature and circumstances of the offenses charged indicate a high level of dangerousness. *See* 18 U.S.C. § 3142(g)(1). The offenses involve significant drug-trafficking and the discharge of a firearm in furtherance of that trafficking. These crimes pose a significant danger to the community as shown by Congress expressly listing them under this factor[3] and dictating that, for persons so charged, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the

---

[3] "[T]he nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;… ." 18 U.S.C. § 3142(g)(1).

4

community." 18 U.S.C. § 3142(e)(3). Second, the weight of evidence against the Defendant is substantial. *See* doc. 1; doc. 28 at 8. When the Defendant was apprehended outside his hotel, he had a tan handgun and a distributable quantity of marijuana/THC products in his backpack. *Id*. The Defendant's hotel room, rented under his name, also had two additional firearms, along with a distributable quantity of marijuana/THC products. *Id*. The Defendant also gave a post-*Miranda* statement admitting to using the tan handgun in his backpack to shoot at an apartment with his co-defendant. *Id*. The government has also discovered numerous digital photographs and communications which corroborate Defendant's involvement with the charged criminal activity. *Id*. Third, Defendant's history and characteristics further support detention, as he, at the age of 18, has three prior failures to appear and an active bench warrant. *See doc. 6* at 5. Moreover, according to the Defendant's domestic partner[4] and despite his asthma, Defendant uses marijuana on a regular basis. *Id*. at 6. Fourth, the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release is extreme and high. As alleged in the criminal complaint, the Defendant and his co-defendant shot approximately 21 rounds of ammunition at or near an apartment building due to a drug trafficking-related dispute. *See doc. 1*. The

---

[4] The Pretrial Services Report identifies Dayna Janette Anchondo as Defendant's "common-law-wife." *Doc. 6* at 1. However, New Mexico does not recognize common law marriage unless such marriage has been held legal in another state. As Defendant has lived his entire life in New Mexico, it appears impossible that his relationship with Ms. Anchondo qualifies as a common law marriage.

5

Defendant and his co-defendant possessed approximately 86.8 gross kilograms of marijuana/THC products in total, along with three firearms, ammunition, and a high-capacity dual-drum magazine capable of storing 100 rounds of ammunition.  *Id*.

Based on the statutory factors, the Court is strongly persuaded that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.

## NATURE OF DEFENDANT'S MEDICAL CONCERNS

Against this strong case for detention, Defendant argues that he should be released because he has tested positive for COVID-19 and suffers from asthma.  *See generally doc. 26*.  As a result, he is at higher risk for medical complications.  The facts cited in the Motion regarding Defendant and the COVID-19 pandemic could support two independent theories justifying release: (i) that Defendant is not or will not receive proper medical care; and (ii) that Defendant could recover and then become reinfected.  With respect to the first theory, Defendant describes his symptoms as "tightness in his chest, difficulty breathing, and the worst headache he has ever had."  *Id*. at 2.  He has not filed a reply refuting the government's assertion that, as of May 20th, he has not had a fever after May 7th and is stable.  *See doc. 28* at 4.  In his Motion, he does not assert that he should be receiving medical treatment that he is not receiving nor that, if he were to need medical care in the future, he would not receive it.  *See generally id*.  He also does not explain how his condition is more likely to worsen in custody than at home.  *Id*.

6

Without such allegations accompanied by adequate support, the Court rejects this justification as a compelling reason for temporary release.

With respect to the second theory, Defendant takes issue with the containment procedures utilized by the detention facility. *Id*. at 2-5. Assuming the likely fact that Defendant contracted COVID-19 while at the detention facility, the containment procedures certainly failed. However, given that Defendant has become infected, the efficacy of containment procedures as to him are decidedly less relevant. He could only be harmed by faulty containment in the future if, after his recovery from the current infection, he was infected again. Given the likelihood that infection by COVID-19 confers some level of immunity to a future infection, this risk is low. *See* Wajnberg A, Mansour M, Leven E, et al., "Humoral immune response and prolonged PCR positivity in a cohort of 1,343 SARS-CoV 2 patients in the New York City region," posted May 5, 2020 (available at https://www.medrxiv.org/content/10.1101/2020.04.30.20085613v1) (last accessed May 28, 2020). Thus, the Court considers this justification for temporary release to be relatively weak.

## PROPOSED RELEASE PLAN

The Court's denial of Defendant's motion is further bolstered by concerns with his proposed release plan. Defendant asks to be released to his partner's mother, Luz Marcia Rohan. *See doc. 26* at 8. It is unclear how close a relationship Defendant has with Ms. Rohan. Regardless, it will place him in close contact with his partner, Ms. Rohan's

7

daughter. Given that his partner has admitted illicit drug use, this contact will not assist Defendant in avoiding his own drug use. *See doc. 6* at 2, 3. Furthermore, the alleged conduct that led to Defendant's instant charges give the Court grave concern that Defendant would comply with mere court orders. In addition to the normal concerns regarding pretrial condition violations, Defendant's COVID-19 positive status means that violations of any order to remain at home would expose other members of the pubic. Finally, due to the pandemic, pretrial supervision, including drug testing and drug counseling, is significantly reduced. Consequently, such supervision is currently less effective at deterring and detecting violations of conditions. For all these reasons, the Court is even more persuaded that no condition or combination of conditions of release will reasonably assure the safety of others and the community, and Defendant's appearance as required.

In support of temporary release, Defendant points to *United States v. Fernando Ronquillo-Burgos*, 1:19-cr-04658-JCH, Doc. 41 (D.N.M. Apr. 24, 2020). The Court is unpersuaded. The differences between Mr. Ronquillo-Burgos's case and Defendant's case are numerous and material. For just a few examples, Mr. Ronquillo-Burgos is: (i) substantially older (60 years old versus 18 years old); (ii) suffers from multiple conditions which increase his risk to COVID-19 complications; and (iii) is not charged with discharging a firearm in furtherance of a drug trafficking crime. Moreover, Mr. Ronquillo-Burgos's release order was based on an attempt to avoid infection, not a

8

response to an inmate already infected. For these reasons, the Court does not find Mr. Ronquillo-Burgos's release under §3142(i) persuasive to Defendant's request.

The Court finds that Defendant has failed to overcome his burden to establish a compelling reason for his release under §3142(i). WHEREFORE, Defendant Oller's Motion to Reconsider Detention Order and Set Conditions of Release (*doc. 26*) is DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE